**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Michael Davie,** | ) | **CASE NO. 1:06 CV 240** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **Reginald Wilkinson, et al.,** | ) | <u>**Memorandum of Opinion and Order**</u> |
| | ) | |
| **Defendants.** | ) | |

<u>**Introduction**</u>

This matter is before the Court upon defendants' Motion for Summary Judgment[1]

(Doc. 83), plaintiff's Counterclaim for Summary Judgment (Doc.95) and plaintiff's Motion in

---

[1]     In the body of the motion, defendants state that the motion is brought on behalf of defendants Cain, Martin, Huber and Harris, and that defendants Wilkinson and Fellner were never properly served.  Plaintiff asserts that these defendants were served.  To the extent they were not, plaintiff contends, the fault lies with the United States Marshal who had previously been instructed by the Court to serve a copy of the Complaint upon each defendant. Plaintiff's assertions are unavailing. The docket shows a return of service unexecuted by the United States Marshal on these defendants.  Subsequently, plaintiff's previous counsel was granted additional time to serve these defendants. Such was never accomplished. Therefore, these defendants are dismissed.

1

Support of Amount of Damages Award for Default Judgment (Doc. 96).  This is a Section

1983 action brought by a state prisoner alleging inadequate dental care.  For the following

reasons, defendants' motion is GRANTED and plaintiffs' motions are DENIED.

**Facts**

In July 2004, plaintiff, Michael Davie, filed this Complaint, *pro se*, in the United

States District Court for the Southern District of Ohio.  He named as defendants Reginald

Wilkinson (Director of the Department of Rehabilitation and Correction, "ODRC"), Bruce

Martin (ODRC Director of Medical Services), Steven Huber (ODRC Director of Dental

Services), Terry Harris (Healthcare Administrator for Ross Correctional Institution), Dr.

Fellner (Director of Dental Services for Richland Correctional Institution), Brian Cain

(Healthcare Administrator for Richland Correctional Institution), Larry Yoder (ODRC Acting

Assistant Chief Inspector) and D.D.S., Inc.

The Complaint sets forth three claims.  Count One alleges that defendants have been

deliberately indifferent to his medical and dental needs in violation of the Eighth Amendment

to the United States Constitution.  Count Two alleges that defendants have violated plaintiff's

rights to due process in violation of the Fourteenth Amendment to the United States

Constitution and Ohio Constitution.  Count Three alleges that defendants have discriminated

against plaintiff on the basis of race. Plaintiff asserts these claims under 42 U.S.C. §1983. All

individual defendants are sued in their official and individual capacities.  At the time of the

Complaint, plaintiff was confined at the Richland Correctional Institution and had previously

been confined, among other institutions, at the Ross Correctional Institution.  Plaintiff was

released from the ODRC in May 2006, and is currently not incarcerated.

2

By Opinion and Order, the Southern District dismissed all claims with the exception of the Eighth Amendment claims and the Fourteenth Amendment due process claims against defendants Wilkinson, Martin, Cain, Fellner and D.D.S., Inc.  That court dismissed the Eighth Amendment claims and the Fourteenth Amendment due process claims against Huber and Harris for failure to exhaust administrative remedies, the Eighth Amendment claim and the Fourteenth Amendment due process claim against Yoder for failure to state a claim, the Eighth Amendment claims and the Fourteenth Amendment due process claims for monetary damages against Wilkinson, Martin, Cain and Fellner in their official capacities without prejudice and the discrimination claim against all defendants for failure to exhaust. The case was then transferred to this Court.  Subsequently, this Court issued an Order dismissing the Complaint in its entirety.  This Court followed the then valid "total exhaustion" rule which required dismissal of an entire complaint where any claim in the complaint had not been exhausted.  Due to the previous determination that some of the claims had not been exhausted, the Complaint was dismissed.  On appeal, the Sixth Circuit recognized that following this Court's Order, the Supreme Court overruled the Sixth Circuit precedent holding that complaints containing both exhausted and unexhausted claims were required to be dismissed.  *Jones v. Brock*, 549 U.S. 199 (2007).  As such, this Court's Order was vacated. Additionally, *Jones* also determined that exhaustion of administrative remedies is an affirmative defense that must be raised by defendants. Accordingly, because the Southern District raised the issue of exhaustion *sua sponte*, that portion of the Order dismissing some of the claims and parties for failure to exhaust was vacated.  The Order was affirmed with respect to the dismissal of Yoder as plaintiff did not challenge that finding.

Accordingly, all claims have been reinstated with the exception of those against Yoder. Plaintiff has since been represented by counsel. An entry of default has been made against defendant, D.D.S., Inc. This Court determined that the request for default judgment against this defendant would be considered at the conclusion of the remaining defendants' case. The Court stated in a later Order that plaintiff may submit evidence in support of its request for default judgment at the same time it submits evidence in support of its motion for summary judgment or in opposition to a motion for summary judgment.

Defendants subsequently moved for summary judgment, supported by plaintiff's deposition and the affidavit of Dr. Peter Huling, D.D.S.  Plaintiff has opposed the motion, appending numerous documents, and filed a "Counterclaim" for summary judgment.

This matter is now before the Court upon the cross motions for summary judgment and plaintiff's Motion in Support of Amount of Damages Award for Default Judgment .

**Standard of Review for Summary Judgment**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).  The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)).  A fact is "material only if its

4

resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party.  Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of [his] pleadings, but [his response], by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is genuine issue for trial.  If he does not respond, summary judgment, if appropriate, shall be entered against him.

The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party.  *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985).  However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.  *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322).  Accordingly, "the mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)).  Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.  *Anderson*, 477 U.S. at 249-50 (citation omitted).

5

**Discussion**

**(A) Cross Motions for Summary Judgment**

**(1) Eighth Amendment - Deliberate Indifference**

Plaintiff contends that defendants were deliberately indifferent to his periodontal disease. Plaintiff alleges that defendants provided no treatment, failed to educate plaintiff about the disease process, allowed plaintiff to remain in extreme physical pain, failed to adequately maintain a dental record of plaintiff's examination results, denied plaintiff's request for nutritional supplements, maintained a standard of dental healthcare below that of professional standards and denied plaintiff's request for treatment from an outside specialist in the field of periodontics. (Compl. Count One)

It is well-recognized that the Eighth Amendment protects prison inmates against deliberate indifference to their serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). "[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Id.* at 104

"An Eighth Amendment claim of denial of medical care has both objective and subjective components, the objective component requiring proof of a 'sufficiently serious' medical need, and the subjective component requiring proof of 'a sufficiently culpable state of mind in denying medical care.' " *Dodson v. Wilkinson,* 2008 WL 5378017 (6th Cir. Dec. 24, 2008) (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir.2004) (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994) and *Estelle,* 429 U.S. at 104) ). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating

6

treatment or one that is so obvious that even a lay person would easily recognize the necessity

for a doctor's attention.' " *Blackmore*, 390 F.3d at 897 (other citations omitted). To satisfy the

subjective component, "[T]he official must both be aware of facts from which the inference

could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference. Knowledge of the asserted serious needs or of circumstances clearly indicating the

existence of such needs is essential to a finding of deliberate indifference."  *Id.*

   The term deliberate indifference "describes a state of mind more blameworthy than

negligence." *Farmer,* 511 U.S. at 835.  As such, "[m]edical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 105.

   See also *Wilson v. Wilkinson,* 62 Fed.Appx. 590 (6th Cir. 2003) (citing *Estelle*) ("[T]he

Constitution does not prohibit medical malpractice. A difference in opinion between a

prisoner and the medical staff about treatment does not state a cause of action.")

   "Where ... 'a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical

judgments and to constitutionalize claims that sound in state tort law.' " *Id.* (quoting *Graham*

*ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir.2004) ).

"However, prison officials may not entirely insulate themselves from liability under § 1983

simply by providing some measure of treatment. Indeed, deliberate indifference may be

established in cases where it can be shown that a defendant rendered 'grossly inadequate care'

or made a 'decision to take an easier but less efficacious course of treatment.' " *Id.* (citations

omitted).

   "Dental needs have been recognized as falling into the category of 'serious medical

7

needs' inasmuch as courts have observed that '[d]ental care is one of the most important needs of inmates.' " *McCarthy v. Place,* 2008 WL 5069039 (6th Cir. Dec. 2, 2008) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir.1980) ).

Defendants argue that they are entitled to summary judgment because plaintiff merely disagrees with the course of his treatment which does not give rise to liability for deliberate indifference.  Plaintiff argues that defendants intentionally failed to diagnose and treat a serious medical need, giving rise to an Eighth Amendment violation.

This Court agrees with defendants. Plaintiff received dental treatment over the course of his confinement.  Even assuming defendants were negligent in their treatment of plaintiff, a constitutional violation is not stated.

Plaintiff was incarcerated on April 9, 1993. Dr. Huling, who is not an expert witness, is the Dental Director for ODRC who reviewed plaintiff's dental records which consisted of x-rays and a log of treatment remarks.  He certifies that the records are authentic.  Huling outlines the remarks made relative to plaintiff's dental treatment, and the treatment log is submitted.  (Doc. 83 Ex. 2; Doc. 116) Although tedious in nature, the Court finds it necessary to set forth this evidence.

After his initial x-ray in May 1993 (which revealed that plaintiff was missing nine teeth and had bone loss around many of his remaining teeth), plaintiff was examined on April 8, 1994 regarding periodontal problems with two of his teeth.  He did not "show" for his next scheduled dental appointment on April 12, 1994.[2]  On April 19, 1994, plaintiff had an x-ray

---

[2]     Plaintiff testified that he missed this and other appointments due to segregation or prison lock down.

8

taken.  On April 22, 1994, plaintiff did not show for his appointment.  On April 29, 1994, he had a dental evaluation where the issue of extracting two teeth was discussed.[3]

On June 12, 1996, plaintiff did not show for a scheduled dental appointment. On July 17, 1996, an x-ray of two teeth was scheduled.  Plaintiff did not show for his July 29, 1996 dental appointment.  On November 15, 1996, plaintiff sent a kite (an informal communication to prison staff) indicating that one of his teeth was causing him problems. Plaintiff sent another kite, indicating the same, on December 3, 1996.  On December 12, 1996, plaintiff had a dental appointment where he complained of pain. On that day, plaintiff sent a "nasty" kite complaining that he was not getting a dental appointment and explaining his "no shows."  An extraction was scheduled for the next day. On December 13, 1996, plaintiff had one tooth extracted, and pain medication was prescribed.

Plaintiff did not show for a scheduled dental appointment on June 12, 1997.  On July 15, 1997, plaintiff sent a kite complaining of a toothache.  He was signed up for dental sick call.  Plaintiff did not show for his July 18 and 31, 1997 scheduled dental appointments.  On August 7, 1997, plaintiff had an examination and a tooth extracted.  He was prescribed a pain reliever.

Plaintiff did not show for his May 8, 1998 scheduled dental examination.  Plaintiff underwent dental examinations on December 3 and 11, 1998, and February 3, 2000.  An x-ray was taken on February 22, 2000.  On March 8, 2000, one tooth was "hand scaled."  On November 2, 2000, it was noted that two teeth would likely need to be extracted, and plaintiff

---

[3]  Plaintiff was thereafter apparently transferred to another institution.

9

requested a calcium supplement.  On November 21, 2000, plaintiff did not show for a scheduled dental appointment.

On January 11, 2001, plaintiff had a dental examination of two teeth. An x-ray was taken of two teeth on January 23, 2001.  On February 1, 2001, an evaluation showed that there was no bone around two teeth and an extraction was recommended.  Plaintiff was to be placed on the list for partial dentures, which plaintiff agreed to.  On February 6, 2001, plaintiff had two teeth extracted, and a third evaluated for extraction.  Plaintiff did not show for his February 19, 2001 scheduled dental appointment.  On April 5, 2001, an extraction was scheduled.  On April 10, 2001, plaintiff filed an Informal Complaint stating that only one of his two teeth had been extracted despite plaintiff's complaints of pain, plaintiff was denied a calcium and magnesium supplement and plaintiff was told that he could not have his teeth cleaned.  On April 16, 2001, a response to each of plaintiff's concerns was made.  On April 18, 2001, the dentist spent 40 minutes talking with plaintiff and answering his questions. Two teeth were extracted at plaintiff's request and pain relievers prescribed.  On April 19, 2001, plaintiff complained of possible tooth fragments coming through his gums after the extractions.  It was explained to him that these were likely boney fragments.  At plaintiff's April 23, 2001 dental evaluation, the dentist noted that plaintiff's extractions were healing well and that the plaintiff "was very pleasant."  Plaintiff's May 21, 2001 dental appointment was rescheduled.  On May 23, 2001, plaintiff paid a medical co-payment to have partial dentures made.  On July 2, 2001, plaintiff had a bite record taken for dentures.  Plaintiff's August 8, 2001 appointment was rescheduled.  On August 10, 2001, plaintiff had his teeth cleaned by the hygienist. On August 23, 2001, plaintiff had the wax "try-in" of his partial

10

dentures.  On November 8, 2001, plaintiff had his upper partial denture seated; the lower was unable to be delivered.  Plaintiff was treated on November 15, 2001 for swelling, and a tooth was extracted.  On November 29, 2001, his partial was adjusted.  On December 6, 2001, impressions were made for plaintiff's lower partial.

On January 10, 2002, a wax try-in of the lower partial was done.  On February 13, 2002, the lower partial denture was seated.  On June 5, 2002, plaintiff's partials were adjusted.  Plaintiff had periodontal probing performed on August 28, 2002 after complaining of bleeding gums.

Plaintiff's medical history was reviewed on January 28, 2004, and the hygienist indicated that there were no changes.  His teeth were root planed, scaled and polished.  Oral hygiene instructions were given.  His partial was readjusted.  A crack in one partial prompted scheduling of a repair.  Plaintiff was also scheduled to receive a reevaluation in three to four weeks.  On February 4, 2004, plaintiff's lower partial was repaired. On February 25, 2004, plaintiff was evaluated, no problems were indicated and it was noted that plaintiff was brushing regularly and removing his partials at night.  His teeth were hand scaled and polished.  Plaintiff's March 3, 2004 appointment was rescheduled.  On March 24, 2004, the treating dentist reviewed plaintiff's  medical history and noted that he was healing well.

Plaintiff sent a kite on February 28, 2005, requesting a periodontist due to pain in his gums.  Plaintiff filed an Informal Complaint on March 7, 2005.  As a result, the treating dentist explained that the ODRC did not have the ability to refer him out to an offsite periodontist and that the best option is a non-surgical approach (because the condition is likely to return) and deep scale root planing.  Plaintiff agreed to this method of treatment.  On

11

March 23, 2005, plaintiff sent a kite stating that his lower partial was broken.  It was sent for repair on March 29, 2005.  Plaintiff had an examination on March 30, 2005.  His teeth were cleaned and root planed on the right side. Oral hygiene instructions were given.  The treating dentist thoroughly discussed periodontal disease with plaintiff and informed him that one tooth needed extraction.  He was told to contact the dental department if pain and swelling occurred. An appointment was scheduled in three weeks.  On April 20, 2005, plaintiff's teeth were root planed and hand scaled on the left side.  He was prescribed a pain reliever.  On May 18, 2005, plaintiff's medical history was reviewed.  The treating hygienist indicated that plaintiff's only concern was his lower partial and a bad taste in his mouth in the morning.  He was given an exam. The hygienist completed scaling and polishing his teeth and reviewed brushing and flossing with him.  The treating dentist noted radiographic evidence of bone loss.  Plaintiff did not show for his May 23, 2005 dental appointment.  Plaintiff's dental history was reviewed on May 27, 2005.  The treating dentist explained that moderate bone loss occurred on one tooth and recommended that it be extracted.  Another tooth was extracted at this time.  On June 27, 2007, impressions of plaintiff's mouth were made for a lower partial denture.  Plaintiff did not show for his August 3, 2005 dental appointment.  On August 8, 2005, a bite registration of plaintiff's teeth was taken.  On September 27, 2005, plaintiff had a dental appointment for a wax try-in.  On December 6, 2005, plaintiff had a dental appointment to seat the lower partial denture.  The lower partial was adjusted on January 5, 9 and 13, 2006.  Plaintiff was thereafter released from custody.

Dr. Leena Palomo, plaintiff's expert, was questioned extensively at deposition about the treatment log.  When asked whether the log showed any instances of untreated reported

dental or mouth pain, she stated that "everything that was complained about he was seen." Dr. Palomo also agreed that the log showed 71 recorded instances regarding dental treatment from 1993 through 2006, and several "no shows" on plaintiff's part for scheduled dental appointments.  While not all of the 71 entries involved treatment, Dr. Palomo agreed that plaintiff received "a lot" of dental treatment while incarcerated between 1994 and 2006. (Palomo depo. 55-61)

Plaintiff also testified at length regarding the treatment log. In fact, he was asked about 66 dated entries on the treatment log. He acknowledged that the treatment log amounted to a reflection of his dental history while incarcerated and that he received the dental treatment as reflected in the log between 1994 and 2006.  (pltf. depo. 47- 84) Plaintiff disagrees that he received treatment when he requested it.  Plaintiff, however, points to his deposition testimony wherein he stated in general that he did not always receive cleanings and tooth scalings when he requested them, and that he was denied dental floss.  (pltf. depo. 16-20) Nonetheless, as shown above, plaintiff did receive some cleanings and scalings.

On the basis of this evidence, plaintiff cannot establish a deliberate indifference claim because when he sought out dental care, he received it.  While he may have been dissatisfied with the type of treatment he received, this type of assertion, as discussed above, does not sustain an Eighth Amendment claim.

Additionally, while plaintiff contends that he should have been treated by a periodontist, Huling avers that the ODRC does not provide inmates with surgical periodontal treatment, or outside periodontal care.  Huling also avers that he knows of no State correctional system in this country that provides surgical periodontal treatment to inmates.

13

Rather, Huling avers, "periodontal disease has been and is treated by means of dental cleaning as available, oral hygiene education, and extractions, followed by partials or full dentures being provided. [Plaintiff] received those treatments during his incarceration."  (Huling aff. ¶¶ 18, 19) Plaintiff's subjective beliefs to the contrary do not establish an issue of fact.

Furthermore, as discussed below, plaintiff's arguments do not warrant denial of defendants' request for summary judgment.

Plaintiff submits the ODRC Dental Policy which states, in part, that

All inmates will receive panoramic dental radiographs within 7 days of arrival at the institution.

The routine intake dental examination will be performed by the Reception Dental Department within 14 days of arrival, utilizing the panorex films.  Emergent dental care will be provided within this first 14 day period as needed.

(Doc. 95 Ex. 5)   Plaintiff asserts that because he did not have the initial examination, defendants did not comply with this policy. The evidence shows that plaintiff had a panoramic x-ray taken when he was first admitted to the ODRC, but that he was not examined until April 1994.  (Palomo depo. at 55; pltf. depo. 47-51) The policy, however, shows an effective date of October 27, 1997.  Plaintiff was first incarcerated in 1993. Nonetheless, this document, like numerous others submitted by plaintiff, is not sworn or certified and, thus, is not properly authenticated for consideration upon a motion for summary judgment.  *Fox v. Michigan State Police Department,* 173 Fed.Appx. 372 (6th Cir. 2006) Moreover, there is no indication that the policy was  mandatory in nature and, therefore, deviation from it does not form the basis for a deliberate indifference allegation.  *See Thompson v. Wiggington*, 1990 WL 179707 (6th Cir. Nov. 19, 1990) ("Prison Policy 13.2, applicable to medical and dental treatment of inmates at the Kentucky facility, does not contain mandatory language which

creates a liberty interest cognizable in this § 1983 action.")[4]

Plaintiff contends that despite the treatment log showing that on April 8, 1994 he was examined regarding periodontal problems, defendants refused to diagnose the disease or provide treatment.  Dr. Palomo testified that there was no diagnosis in plaintiff's case, and "no metric on which to base the diagnosis."  (Palomo depo. 98) Dr. Palomo stated in her Summary Statement that "no periodontal charting is available in the chart.  No calculation of attachment loss is available and no concrete diagnosis is provided.  On the other hand, radiographic examination shows various patterns of bone loss around several teeth."  (Doc. 95 Ex. 26) Dr. Palomo states in her Summary Statement that defendants failed to diagnose plaintiff.  She further states, "Neither initial nor surgical therapies were initiated because the problems were not diagnosed properly.  Additionally, because [plaintiff's] periodontitis had not been diagnosed he was not informed of the effort he needed to put into oral hygiene."  (Summary Statement at 3) Dr. Palomo also states, "In courses which I direct, failure to diagnose is described as negligence and a failure in the dentist's responsibility." (*Id.* at 2)

As stated earlier, the term deliberate indifference "describes a state of mind more blameworthy than negligence." *Farmer,* 511 U.S. at 835.  Accordingly, medical malpractice does not amount to an Eighth Amendment violation.  *Estelle,* 429 U.S. at 105.  At most, Dr. Palomo's opinions show that the prison dentists were negligent and committed malpractice in their treatment of plaintiff's teeth.  This will not form the basis of a deliberate indifference

---

[4]     Plaintiff points to numerous other provisions of the policy and asserts that defendants did not comply with it in plaintiff's case.  For the reasons set forth above, whether the policy was adhered to does not create a § 1983 claim.

15

claim.  There is no evidence of culpable recklessness.  *See Baez v. Kahanowicz*, 278

Fed.Appx. 27 (2d Cir. 2008) (citing *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir.2003)

(internal quotations omitted) ("Although an inmate may prevail on an Eighth Amendment

claim arising out of medical care by showing that a prison official acted with deliberate

indifference to the inmate's serious medical needs, a showing of medical malpractice is

insufficient to support such a claim unless the malpractice involves culpable recklessness, i.e.,

an act or a failure to act by the prison doctor that evinces a conscious disregard of a

substantial risk of serious harm.")

Plaintiff also argues that during the April 29, 1994 examination, Dr. Huber stated that

he would not prescribe antibiotics or pain medication, and that no other treatment would be

rendered until plaintiff agreed to have extractions.  Plaintiff, however, only points to the

treatment log which indicates that he was evaluated regarding two teeth and that he was to

"contact [the] clinic [as to] when ext[raction]s are desired." (Doc. 95 Ex. 2) Plaintiff's

deposition testimony shows only that he remembers "being in great pain" for this evaluation.

Plaintiff asserts that April 29, 1994 was the first day of a pattern of denial of pain medication

prior to invasive and painful extractions.  Plaintiff additionally argues that from April 29,

1994 until December 16, 1995, all requests for pain medication were denied.  But, plaintiff

does not point to evidence that any pain medication was requested and denied. In fact,

plaintiff testified that he received Tylenol, Motrin and antibiotics.  He agreed that these would

work temporarily to relieve pain and swelling, and to help prior to extractions. (pltf. depo. 96)

Plaintiff does not show evidence of deliberate indifference on this basis.

Plaintiff also states that he sent kites on November 15, 1996 and December 3, 1996

16

requesting emergency dental care due to pain, but that he received no response until after he sent a third kite on December 12, 1996.  He was then seen on December 13, 1996 when a tooth was extracted.

The treatment log shows that plaintiff sent the two kites on November 15 and December 3, 1996 which would result in signing up for dental sick call: "kite: tooth causing prob.  sign up for DSC [dental sick call.]" The treatment log shows that on December 12, plaintiff was seen for a dental sick call when he complained of the pain and the extraction was scheduled for the next day.  A tooth was extracted on December 13 and pain medication prescribed.  The log also acknowledges the third kite (of December 12) wherein plaintiff complained about not getting an appointment.  This evidence shows that defendants did respond to plaintiff's request for treatment.  Although plaintiff apparently was not satisfied that he was not seen earlier for a dental sick call, this does not amount to deliberate indifference.

Plaintiff asserts that while confined in the Ross Correctional Institution from 1997 to 2001, Dr. Huber's treatment plan for periodontitis was brushing and flossing and because this plan was a "sham," it allowed plaintiff's disease to proliferate and plaintiff continued to lose alveolar bone and teeth; and Huber and Harris denied plaintiff emergency treatment for pain, antibiotics and dental cleanings.  Plaintiff points to no evidence, including deposition testimony or affidavit, in support of these assertions. Plaintiff's affidavit states in general terms that during his entire prison confinement he "was in pain constantly" and that his "complaints for pain went ignored."  (pltf. aff.)  As discussed earlier, however, the treatment log shows that pain medication was prescribed to plaintiff, and plaintiff testified at deposition

17

that pain relievers and antibiotics worked temporarily to relieve his pain.

Plaintiff relies heavily on reports generated in a class action involving the ODRC and the issue of, *inter alia,* dental care in Ohio's prisons.  These documents are the subject of defendants' separate Motion in Limine which has been granted by separate order of this Court.  In particular, defendants demonstrate that the documents generated in that case were agreed to be kept confidential.[5]  Nor, defendants point out, were the documents properly authenticated.

Plaintiff also submits numerous informal complaints (kites) he made regarding dental issues which include hand-written responses from unidentified individuals.  (Doc. 95 Exs. 11-18).  Plaintiff asserts that these are evidence that his requests for pain relief, periodontal service and denture adjustments were denied, delayed, or unanswered.  These documents are also the subject of defendants' separate Motion in Limine.  The Court agrees that this is not admissible summary judgment evidence.[6]  Even if it were, the complaints do not show, as discussed below, that defendants were deliberately indifferent to plaintiff's dental needs.

Almost all of the "kites" show a response hand-written thereon (presumably by prison

---

[5]  Plaintiff now agrees that the information was to be kept confidential, but asserts that no case law prohibits admission of the documents here.

[6]  Plaintiff filed an Opposition to Defendants' Reply in Support of its Summary Judgment.  This document is a sur-reply to defendants' Motion for Summary Judgment as well as an opposition to various motions filed by defendants. Plaintiff, however, was not permitted to file a sur-reply.  (*See* March 16, 2009 Order) Plaintiff submits his own affidavit attempting to authenticate the kites, other informal complaints and responses.  Plaintiff, however, is not competent to authenticate these materials.  At a minimum, the hand-written responses are of unknown origin.  Plaintiff does not have personal knowledge of the method of which these records are kept.

18

dental staff), and the treatment log shows that plaintiff was attended to. For instance, in a December 20, 2001 kite, plaintiff stated that his "denture partial does not fit properly, and causes me pain and discomfort.  Please place me on dental sick call for any adjustments that may be needed."  (Doc. 95 Ex. 11)   A hand-written response states, "I am waiting to [schedule] you when your other partial comes in so the dentist can [adjust] them both.  Soon as we receive it I will schedule you."  (*Id.*)  The treatment log shows that on January 10, 2002, a wax try-in of the lower partial was done. (Huling aff.) Plaintiff sent a kite on February 6, 2002, complaining that his "partial dentures still do not fit properly." (Doc. 95 Ex. 13) The treatment log shows that on February 13, 2002, the lower partial denture was seated. (Huling aff.)  Plaintiff sent another kite on May 20, 2002, stating that he needed adjustment to his lower partial, and that he would like his periodontal disease to be treated. (Doc. 95 Ex. 14) The response states, "We do not treat periodontal disease here. You will be seen for [adjustment] of partial." (*Id.*)  The treatment log shows that on June 5, 2002, plaintiff's partials were adjusted. (Huling aff.)  In an August 7, 2002 kite, plaintiff asked "how much longer" it would be before he had his teeth cleaned and stated, "As a result of my untreated periodontal disease I am experiencing pain, swelling, and bleeding of the gums."   (Doc. 95 Ex. 15)   A response states, "You are only #426 on List.  We have had a waiting List since 1999.  She is going down the List since this date." (*Id.*)   Plaintiff requested periodontal services again on August 20, 2002.  (Doc. 95 Ex. 16)   The treatment log shows  plaintiff had periodontal probing performed on August 28, 2002 after complaining of bleeding gums. While not every complaint may have been answered or attended to in the fashion plaintiff desired, plaintiff has not demonstrated deliberate indifference amounting to a constitutional

violation.

For these reasons, plaintiff does not demonstrate deliberate indifference to his dental needs. Comparison of case law supports this conclusion.

In *Young v. Kazmerski*, 266 F.Appx. 191 (3rd Cir. 2008), the Third Circuit determined that summary judgment was not appropriate in an Eighth Amendment dental care case. There, the prison dentists had failed to provide the inmate with dentures for 11 months after all but six of his teeth had been pulled.  The appellate court determined that the matter had to be submitted to a jury as to whether there was a serious medical need, and whether defendants were deliberately indifferent.  The facts showed that beginning in November 2004 (two months after his teeth were pulled), the inmate complained that he was in pain and could not eat or sleep because his six remaining bottom teeth were cutting into his top gums. The dentist told him to check the call schedule after Thanksgiving, and that he would begin the process for fitting dentures. The inmate was not, however, put on the call schedule. On December 22, 2004, the inmate signed up for dental sick call, but was told to come back the next day because the dentist was out. The inmate was turned away the next day by the second dentist at the prison for reason that "he had to examine more serious patients."  In January and in March 2005, the inmate submitted request forms for dentures.  The forms stated that the inmate could not eat anything that had to be chewed because he had only six bottom teeth that cut into his top gums, and that this caused severe soreness and swelling in his gums.  The dentist still did not begin the process for making the dentures until April 2005, and the inmate finally received them in August 2005.  Thus, as of November 2004, a physician had diagnosed the inmate as needing treatment. The inmate did not, however, receive treatment at that time and

his first appointment for impressions was in mid-April, which was five months after he first told the dentist that he was in pain.

Here, as discussed above, there is no dispute that plaintiff was seen each time he reported pain, and plaintiff does not show an absence of treatment following a request to be put on the dental sick call.

In *McCarthy v. Place,* 2008 WL 5069039 (6th Cir. Dec. 2, 2008), the Sixth Circuit determined that summary judgment was inappropriate in an inmate's Eighth Amendment case. The facts showed the following. During an initial examination on June 6, 2002, plaintiff complained of a severe toothache. The dentist discovered that a cavity was the cause of the pain and recommended a permanent filling. The dentist also determined that plaintiff had several other cavities and that two of his teeth needed to be extracted. The dentist then decided to extract one tooth at a time so that plaintiff could still chew. Plaintiff was placed on a list for the required extractions and fillings. Plaintiff told the dentist that the teeth that needed to be extracted did not bother him and requested that the fillings be done first because of the pain. The dentist responded that he would not proceed with treatment unless plaintiff abided by the treatment plan that called for the extractions first. The dentist gave plaintiff a packet of six ibuprofen packets for the pain. On July 31, 2002, the first tooth was extracted and a follow-up was required because root of the tooth remained. Plaintiff continued to complain regarding the pain caused by his cavity and was given another packet of ibuprofen. On August 21, 2002, plaintiff was seen for the removal of the root. On October 8, 2002, plaintiff's second tooth was extracted. In November 2002, plaintiff could hardly eat Thanksgiving dinner because of the toothache. On January 29, 2003, the tooth causing

21

plaintiff's pain was filled, and in May 2003 the remaining cavities were filled.  It was undisputed that there existed an issue of fact as to a serious medical need given that plaintiff's cavity and toothache were left untreated for more than seven months, during which time he experienced significant pain and difficulty eating solid foods.  As to deliberate indifference, the court rejected plaintiff's assertion based on the slow pace at which his teeth were extracted because the dentist showed that he considered simultaneous extraction but chose the other course of action believing that this would permit plaintiff to keep chewing.  But, the court did find an issue of fact on the basis that the dentist knew plaintiff had significant pain for seven months and only prescribed the ibuprofen.  Plaintiff submitted an affidavit from another inmate who averred that the dentist treated his painful cavity not with ibuprofen, but by drilling the decay out and packing it with something temporary until it could be filled.  In plaintiff's case, the dentist chose a less efficacious treatment route by only prescribing ibuprofen.  Since the dentist was familiar with a more effective treatment option, a jury could find that he disregarded a risk of serious harm in plaintiff's case by failing to temporarily fill the cavity.

Again, in the within case, Dr. Palomo admitted that the treatment log did not show any instances of untreated reported dental or mouth pain and when plaintiff complained, he was seen.

The case herein is more akin to *Stubl v. Carolyn,* 2009 WL 33483 (W.D. Mich. Jan. 5. 2009).  There, plaintiff underwent dental surgery while incarcerated. He then developed an oral infection. After x-rays were taken, the decision was made to remove all of plaintiff's teeth.  The extractions were completed, but plaintiff's gums failed to heal properly.  He

22

suffered pain for two months, and eventually removed broken teeth particles from the lower left section of his gums. Plaintiff informed the dental assistant that he had removed the particles from his gums and wrote several complaint letters. Plaintiff's dentures did not fit properly because his gums were deformed as a result of the unsatisfactory extractions. Although the dentures were returned two or three times, they were never successfully corrected, and they interfered with plaintiff's speech and ability to eat. The court rejected plaintiff's Eighth Amendment claim and noted that this involved a case where the prisoner "received inadequate medical treatment." *Id.* at *4 (citing *Westlake, supra*) However, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Id.* (citing *Comstock v. McCrary,* 273 F.3d 693 (6th Cir. 2001) As such, the court recognized that plaintiff received dental surgery when he needed it, and more extensive dental surgery later. The court stated, "While one, or both, of the procedures may have been performed negligently, the dental staff responded to his need for oral surgery." *Id.* He also received dentures, which the dental staff attempted to fix on several occasions after plaintiff complained that they did not fit. The court concluded that while plaintiff may have alleged negligence, he failed to allege facts showing deliberate indifference.

So too, in the case herein plaintiff received much dental care. Although he disagrees that it was performed in a competent manner, he does not display deliberate indifference to his dental needs.

Plaintiff asserts that his case is similar to *Chance v. Armstrong,* 143 F.3d 698 (2d Cir.

23

1998).  This Court disagrees.  First, that case was resolved on a 12(b)(6) motion to dismiss, and not a motion for summary judgment.  The court even noted, "It is important to recognize the difference between disposing of a case on a 12(b)(6) motion and resolving the case later in the proceedings, for example by summary judgment."  *Id.* at 701. Second, the court found that plaintiff had alleged a serious medical condition in that his complaint stated that he had been in great pain for at least six months, had been unable to chew properly and had choked on his food, all due to the prison dentists' actions.  Plaintiff had adequately alleged deliberate indifference in that he had claimed that the two dentists had recommended an unnecessary course of treatment (extraction), while other dentists had recommended less invasive procedures (fillings) that would have saved his teeth.  He had also alleged that the two dentists had recommended extraction not on the basis of their medical views, but because of monetary incentives.  Plaintiff herein, on the other hand, has had the opportunity to present evidence to support his claims but has failed to show that defendants were deliberately indifferent to his serious medical needs.

For the foregoing reasons, defendants' Motion for Summary Judgment is granted and plaintiff's Counterclaim for summary judgment is denied.

The Court need not determine whether part of plaintiff's claim is barred by the statute of limitations because it has determined that plaintiff fails to demonstrate an Eighth Amendment violation based on the entire record of his dental history while incarcerated.[7] Additionally, having found no constitutional violation, the Court need not address the issue of

---

[7]     Defendants filed a Motion for Leave to File Amended Answer to assert the affirmative defense of statute of limitations.  The motion has been denied by separate marginal order as moot given the findings herein.

qualified immunity.  *Dunn v. B. Matatall*, 549 F.3d 348 (6th Cir. 2008) (citations omitted) ("If, and only if, the court finds a violation of a constitutional right, does the court consider whether the officer is entitled to qualified immunity.  If there is no constitutional violation, then the plaintiff's § 1983 claim fails as a matter of law and the defendant is therefore entitled to summary judgment and does not need qualified immunity.")

Count One fails.

### (2) Due Process - Fourteenth Amendment

Plaintiff alleges that defendants denied plaintiff due process of law with the intent to deny him adequate dental treatment.  As discussed herein, plaintiff has failed to show denial of dental treatment.  This claim fails.

### (3) Equal Protection - Fourteenth Amendment

Plaintiff alleges that defendants discriminated on the basis of race in the following manner.  With knowledge that African Americans have a higher percentage of periodontal disease, defendants created a policy to circumvent periodontal treatment.  Plaintiff argues that this is a disparate impact claim because the adverse consequences of the policy fall disproportionately on African Americans.

Plaintiff fails to establish a disparate impact claim.  To establish his equal protection claim, plaintiff must show that the dental policy discriminates on its face or, although facially neutral, has a disparate impact on a given group.  *See Wellmaker v. Dahill*, 836 F.Supp. 1375 (N.D.Ohio 1993) (citations omitted).   Plaintiff asserts the latter.  Certainly, the policy challenged by plaintiff is neutral on its face. Because the policy is neutral on its face, plaintiff must establish that the alleged disparate impact is the result of discriminatory purpose.

25

*Keevan v. Smith*, 100 F.3d 644 (8th Cir. 1996). " 'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (citing *Personnel Adm. of Mass. v.* Feeney, 442 U.S. 256 (1979).  Plaintiff fails to demonstrate such discriminatory purpose.  Furthermore, Huling avers that

> Pursuant to ODRC policy at the time of [plaintiff's] incarceration, inmates did not receive surgical periodontal treatment and were not sent out to a periodontist for periodontal treatment.
>
> It is currently ODRC policy that inmates do not receive surgical periodontal treatments and were not sent out to a periodontist for periodontal treatment.  I know of no State correctional system in the United States that provides surgical periodontal treatment to inmates.
>
> Instead, periodontal disease has been and is treated by means of dental cleaning as available, oral hygiene education, and extractions, followed by partials or full dentures being provided. [Plaintiff] received these treatments during his incarceration.

(Huling aff. ¶¶ 17-19) Plaintiff has no evidence that defendants had a discriminatory intent in having a dental policy that precludes surgical or outside periodontal treatment, while choosing another method of treatment.

Nor does plaintiff show disparate treatment in violation of the Equal Protection Clause.  To maintain such a claim, plaintiff must show that "he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Garner v. Morales*,  2009 WL 577755 (5th Cir. March 6, 2009) (citations omitted). "Discriminatory intent 'implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group.' " *Id.* (citing *Lavernia v.*

26

*Lynaugh*, 845 F.2d 493, 496 (5th Cir.1988)).  Plaintiff alleges that defendants selected which inmates would receive preventative treatment on the basis of race.  He asserts that White inmates receiving cleanings and were given priority in dental treatment.

Plaintiff submits the affidavit of a fellow inmate who avers the following.  He told plaintiff that there was a hygienist at the dental clinic and that he received regular cleanings.  When plaintiff signed up for a dental cleaning, he was told there was no hygienist.  When the affiant questioned Dr. Huber regarding the hygienist, Huber told the affiant that the White patients "will always receive preference."  (Doc. 95 Ex. 8)

As defendants point out, however, the treatment log shows that plaintiff received cleanings and his expert acknowledged as much.  (Huling aff.; Palomo depo. 61-62)  Moreover, plaintiff did receive extensive dental care, as discussed herein.

For these reasons, this claim fails.

**(B) Plaintiff's Motion in Support of Amount of Damages Award for Default Judgment**

This Court previously entered default against defendant D.D.S., Inc. for failure to answer.  Plaintiff was ordered to submit evidence in support of the request for default judgment at the same time it submitted evidence in support of a motion for summary judgment or in opposition to a motion for summary judgment.  The Court finds the evidence submitted by plaintiff to be insufficient to support an entry of default judgment against this defendant. Furthermore, for the same reasons this Court granted summary judgment in favor of the other defendants, default judgment against D.D.S., Inc. is inappropriate.

**Conclusion**

For the foregoing reasons, defendants' Motion for Summary Judgment is granted,

plaintiff's Counterclaim for Summary Judgment is denied and plaintiff's Motion in Support of

Amount of Damages Award for Default Judgment is denied.

     IT IS SO ORDERED.


                /s/ Patricia A. Gaughan
                PATRICIA A. GAUGHAN
                United States District Judge

Dated:  4/22/09